*Saturday,*
December
31st.

Lessee of DILWORTH and others *against* SINDERLING
and LEWIS.

It is now a settled rule that interest is recoverable for money lent and advanced; and this rule applies to loans made when the law was held to be otherwise.

BY consent of parties, judgment was entered for the plaintiff in this ejectment, subject to the payment of such sum of money as should be found due to Mr. *Lewis*, as executor and residuary devisee of *Benjamin Fuller*. This question was tried at a nisi prius, before Mr. Justice *Yeates*, on the 6th instant; when the jury found for Mr. *Lewis* 2,936 dollars 40 cts.

A trustee is entitled to interest upon advances made for the use of *cestui que trust*, to supply the deficiency of the fund. He is also entitled to an allowance for depreciated paper money paid him during the war, for rent of the trust estate, and for expenses incurred in erecting proper and necessary buildings upon it, although the *cestui que trust* was not consulted.

and now, upon a motion for a new trial by the plaintiff, his Honour reported the facts in substance as follows:

About the year 1770, the rev. *William Sturgeon*, a minister of the protestant episcopal church in *Philadelphia*, being in great distress, and having several children, some of whom were very young, his congregation made a subscription of about 400*l.* and confided the money to the rev. *Jacob Duché*, *Joseph Donaldson*, and *Benjamin Fuller*, " to be by them laid " out in the purchase of a small piece of ground, or in such other " manner as to them should seem best, for the support of Mr. " *Sturgeon*, and the maintenance and education of his younger " children." The execution of the trust was left to *Fuller*, who received the money, and purchased with it about 63 acres of land near the city (the premises in the ejectment); the title to which, he took in his own name, having paid more for the land than the amount of the charity. *Sturgeon* died in *November* 1770, having lived but a short time on the land. *Fuller* then took charge of his three minor sons, who were particularly the objects of the trust, put them to school, and defrayed the expense of their maintenance and education. When they left school, they were bound out as apprentices; and to two of them when they came of age, the one in 1783, and the other in 1786, he gave 100*l.* each, to assist them in commencing their trade. The third son died young. The premises were rented, and the rents received by *Fuller*, until *November* 1799, when he died. Part of the rents, reserved upon a lease for five years commencing in *March* 1777, were paid in depreciated paper money, by which a loss was sustained; and when the youngest son came of age, the annual interest of the money which *Fuller* had advanced beyond the rents, exceeded the annual rent. About the year 1789, two of the sons being dead, and the third absent, he expended upwards of 200*l.* in building a plain stone house, and making necessary repairs on the land; and from that time, the balance against the estate increased rapidly. *Fuller* was not negligent either in attention to the children, or in the management of the estate. He many times spoke of it as their estate, and mentioned it in one or two wills, afterwards revoked. But upon their coming of age, it did not appear that he told them of their interest in the land; nor did the lessors of the plaintiff, who were the surviving brother and sis-

1808.

Lessee
of
DILWORTH
v.
SINDER-
LING.

ters, ascertain the trust until his death, when the ejectment was brought. Shortly before that, he offered to lease it for twelve years; and he once told Mr. *Lewis*, " people say the estate does not belong to me, but I say it does." At this time however the annual interest of the money, advanced by him, so far exceeded the rent, that he probably took it for granted the children could never redeem the estate, and therefore that it would remain his property. He kept in his books a regular account of the rents, as well as of his advances, upon which he charged interest; and at the end of each year he carried the balance to a new account. In some instances he charged interest upon interest, by calculating it upon the balance of the former year, without adverting to its being composed of interest. After the ejectment was brought, the place suffered for want of attention; and the rent received from it was very little. If he was not entitled to interest on his advances, nor to an allowance for the depreciated money, nor to the expenditures for building, and his residuary devisee was bound to answer the full value of the rents as if the place had been kept in good order, the trust owed him nothing; if on the contrary he was entitled, and the charge was to correspond with the actual receipts, the trust was in debt to him the amount found by the jury, deducting the charges of compound interest, which they were told by the counsel to rectify, but had omitted to do it.

*Gibson* and *M. Levy* in support of the motion. There are a few settled rules that must govern this case. By accepting a trust, the trustee is obliged to execute it with fidelity, and reasonable diligence; and it is no excuse to say that he has no benefit from it. *Charitable Corporation* v. *Sutton*. (a) He is never allowed to make a profit by a breach of the trust, *Earl Powlet* v. *Herbert;* (b) and if he forbears to do what it was his office to have done, it shall in no sort prejudice the *cestui que trust*. *Lechmere* v. *Earl of Carlisle*. (c) These principles are enforced with peculiar strictness in the case of charities, which are objects of great favour in equity; and they are fatal to the claim of the present trustee, who has acted upon a system to make the estate his own, and neglected to inform the *cestui que trusts* of their right, until by the accumulation of principal and inte-

(a) 2 *Atk.* 406.     (b) 1 *Vez. jr.* 287.     (c) 3 *P. Wms.* 315

rest the estate is not worth redemption. Fidelity to the trust, demanded a disclosure to the *cestui que trusts* in 1786, when they might have redeemed; forbearing to do it was a neglect of duty; and if he is not punished for it, he makes a profit by a breach of trust. In such cases, where the trustee has attempted to impose upon the charity, the rule in chancery is to cut off the interest from the sums he has paid, except from the time of their liquidation by the master, and to make him pay costs. *Attorney General* v. *Brewer's Company.* (*a*) But even considering this as a common case of debtor and creditor, the plaintiff owes *Fuller's* estate nothing; the demand is made up by interest, allowance for depreciated money, and expenditures for buildings. Interest upon an open account was against all the decisions, at the time these advances were made. In *Jacobs* v. *Adams* (*b*) (1781), it was held that where no day of payment was fixed for money lent, interest was payable only from demand. In *Henry* v. *Risk* (*c*) (1788), no interest upon an open account for goods sold and delivered. In *Williams* v. *Craig* (*d*) in the same year, no interest upon an unliquidated account. At that time there were but three cases in which interest was allowed upon an open account; 1. Where there was an express agreement. 2. Where there was a general usage, as in the trade between *England* and *America*. 3. Where there was an unreasonable and vexatious delay; which can never be where there is no demand. And although in *Willing* v. *Crawford* (*e*) (1803), the rule was said to have undergone a change, yet the old rule was recognised, and this case must be governed by it. But under the new rule, *Fuller* would not be entitled. Here is a long unsettled account, made intricate by his neglect, and of which there was no adjustment or demand of settlement for nearly 30 years. In such a case, the uniform rule has been, to deny interest. *Boddam* v. *Ryley* (*f*), and *Barwell* v. *Parkes* (*g*). *Fuller* should be charged with the full amount of the rents, without an allowance for depreciation. He has made a strict account against us, and should be charged strictly. He was not bound to receive paper money. His successor, too, should be charged with the injury to the place, and with full rents; for although the estate was considered by the trustee as

*1808.*

Lessee of DILWORTH *v.* SINDERLING.

(*a*) 1 *P. Wms.* 376.  (*d*) 1 *Dall.* 315.  (*g*) 2 *Bro. C. C.* 2.
(*b*) 1 *Dall.* 52.  (*e*) 4 *Dall.* 289.
(*c*) 1 *Dall.* 265.  (*f*) 2 *Bro. C. C.* 239.

1808.

Lessee
of
DILWORTH
v.
SINDER-
LING.

his own, it was his duty not to let it go to ruin. In 1786, he was bound to convey to the children; his trusteeship being limited to their minority. Buildings, subsequently erected, were not within his authority, nor were they for the benefit of the *cestui que trusts;* for the expense has swelled the balance to the complete absorption of the equitable interest. The verdict must be set aside at all events; for the jury have allowed compound interest, which is manifest from a mere inspection of the account.

*Rawle* and *Ingersoll* contra. The general rule is that a trustee is neither to gain nor lose; and in this case, giving him the whole amount of his claim, *Fuller* does not gain a cent, as he charges nothing for his trouble; giving him less, he is out of pocket for advances charitably made to supply the deficiency of the trust fund, and to improve it. He never claimed the estate as his own against the will of the *cestui que trusts;* but he considered the probability of a redemption as nothing, because the advances were beyond the value. The object of the trust was to maintain and educate the minor children. The rents of the land were not adequate. He advanced money for the purpose. He gave the sons schooling and a trade; and to two of them 100*l.* each to set them out; and all this was perfectly right, though it broke in upon, and even absorbed the principal of the trust; for the principal was small, and was designed to be so applied. *Barlow* v. *Grant.* (a) When they came of age, his demand, allowing interest, exceeded the rent; so that to have proposed a redemption, when they had no property, would have been idle; and there was no breach of trust in it, because the charity was not contemplated to last beyond their minority. He however improved the property afterwards by buildings, and great care; and the question is whether he is to be charged with more than he received, and to be credited with less than he has paid, with interest. The rule of interest is now perfectly settled, in opposition to the old decisions. Interest is always due for money lent and advanced; and the notion that the rule reaches only so far back, and that to all loans before, the old rule applies, is contradicted by the case of *Crawford* v. *Willing*, where the transactions upon which the debt arose occurred before the year 1776. That *Fuller* rendered the account intricate,

(a) 1 *Vern.* 255.

is not the fact; it was plain enough; and the only reason why it was not settled, was because there was no person to settle it, and to pay him a certain sum, for an uncertain value in return. Interest upon the advances of a trustee has been allowed after a greater lapse of time, in *Cecil's Lessee* v. *Korbman*, (a) in this court. The cases, in which it has been disallowed, have been cases of fraud, and of such gross negligence as produced great mischief to the debtor. So were *Attorney Gen.* v. *Brewers' Company*, and *Boddam* v. *Ryley.* As to the depreciated money, it was a legal tender; for the act of 31st *May*, 1780, *M'Kean's ed.* 388, did not suspend the tender law as to contracts made after 1st *November* 1779, or *where a distress might be made*, which was our case. That law was not generally repealed until *June* 1781, and then there was a saving of guardians and trustees who had received such money *bona fide.* The rents since *Fuller's* death have fallen in consequence of the ejectment; during which, according to the plaintiff's argument, it was neither our interest nor our duty to improve the place; for the more we expend, the less we are to get. And as to the buildings, they were essentially necessary; the place was not tenantable without them, and the *cestui que trusts* were not present to be consulted. Had they been costly or useless, the case would have been different; but in consequence of this improvement, and the great rise in lands, the estate may be now redeemed better than at any other time. The compound interest is a matter of calculation, and we are ready to correct it. The jury omitted the direction we gave them at the trial.

*Reply.* At the time of these advances, money lent bore no interest either here or in *England.* The benefit attending loans, at this day, ought not to be extended to past transactions, because it was not in the contemplation of either borrower or lender, and formed no part of the implied contract. What the lender could not have expected to receive, there is no propriety in allowing him. The act of 1780 merely excepts contracts after *November* 1779, and cases in which a distress might be made; that is where it *was* made. And the reason of both is obvious: as to the one, the contract must have been made with a knowledge of the tender law; as to the other, if you compelled the tenant to pay, it was fit he should pay in the current paper; and accordingly suits at law were excepted as well as distresses.

(a) *Supra.* 135.
3 R

1808.

Lessee
of
DILWORTH
v.
SINDER-
LING.

TILGHMAN C. J., after stating the facts, delivered the opinion of the court as follows.

Several reasons have been urged by the counsel for the plaintiff in support of their motion for a new trial. These may be reduced to the following heads:

1. No interest ought to have been allowed on *Fuller's* advances.

2. No allowance should be made to *Fuller* for depreciated paper money.

3. No allowance should be made for money expended in buildings after the youngest child came of age.

4. The jury have allowed compound interest.

1. It seems to have been formerly held that interest was not allowable on an account for money *lent* and *advanced*. That opinion gradually declined upon more mature reflection; and without citing particular cases, it may now be safely affirmed, that for a considerable time past the settled law has been, that interest is recoverable for money lent and advanced. Is there any thing particular in this case to distinguish it from the general rule? *Fuller* has charged no commissions. I think he ought not. The honourable and charitable trust he had undertaken forbade such a charge. It may be said he would have been more charitable if he had charged no interest. True. But he was under no legal obligation to do so. It is material that the *subscribers* to the charity seem to have had no views beyond the maintenance and education of the children. They did not expect that there would be more than enough for this. The whole subscription amounted to 408*l.* 14*s.* 3*d.* It was left to the discretion of the trustees whether to invest the money in land or not. Now if it had remained in money, it would have been expended as occasion required. After it was invested in land, either the object of the charity must have been violated, or money must have been borrowed for the support of the children. If *Fuller* had borrowed, he must have paid interest, which would have fallen on the trust estate. Now where is the difference to the children, whether interest is paid to *Fuller* or to a stranger? There is no just cause of complaint, because the jury have allowed interest.

2. On the second point little need be said. The plain principles of justice demand that a trustee who has acted to the best of his judgment ought not to be money out of pocket. There is no ground for saying that *Fuller wantonly* received

bad money. We know that during the war of the revolution, it was not prudent to refuse the current paper. In consideration of this, it is provided by act of assembly that guardians and trustees shall not be chargeable with losses occasioned by the receipt of such money. And if there was no act of assembly on the subject, I should not hesitate to say that the law would be the same.

3. As to the money expended in buildings and repairs, *Fuller* would have acted with more prudence and propriety, if he had informed the children, when they came of age, of the exact state of the trust, and taken their advice, whether to keep the place any longer, or sell it at once, and thus close the business. If he had laid out the money in *improper* buildings, it would have been but reasonable to throw part of the expense on him. But that was not the case. He made no other than plain solid buildings, very necessary for the land, and by which its value has been greatly increased. It is certain that the balance against the trust estate has increased very much since the children came of age; and this increase has arisen altogether from those buildings, and the interest on *Fuller's* account. But on the other hand, the children have the advantage of the great rise in the value of land. If it appeared that *Fuller* had intentionally deceived them as to the nature of their rights, or that he had ever formed a design of making the estate his own to their prejudice, it would be proper to punish him by striking from his account the expenditure for the buildings; but that not being the case, it is reasonable to allow it.

4. In the last objection to the verdict there is weight. Although we do not exactly know in what manner the jury stated the account, yet there is sufficient reason to suppose, that in some instances they allowed charges of compound interest. But the defendant's counsel having consented to correct all errors of that kind, there is no occasion for a new trial. The court recommend that the account should be made out on each side, correcting the errors of compound interest. If the two accounts thus made out agree, it may be taken for granted, that the calculation is right. If they differ, the court reserve the right of deciding between them.

On the whole of the case, the court think there is no cause for a new trial, the defendant consenting to correct errors of compound interest under their direction.

New trial refused.