Reid, administratrix of Reid,

*against*

The President & Directors of the Rensselaer Glass Factory.[*]

ALBANY,
October, 1824.

Reid
v
Rensselaer
Glass Factory.

Assumpsit to recover the balance of an unsettled account. The declaration was for money paid, laid out and expended, and lent and advanced by the intestate for and to the use of the defendants, money had and received by the defendants for the use of the intestate, goods, wares and merchandizes sold and delivered, work, labor and services rendered, and materials furnished by the intestate for and to the defendants, for pay and salary as their agent, and on an account stated. The defendants pleaded the general issue, with a notice of set off, of monies paid, laid out and expended, monies lent and advanced, monies had and received, goods sold, work and labor, &c.

On the 1st of *May,* 1812, the president, &c. of the *The Rensselaer Glass Factory,* a company engaged extensively in the manufacture of glass, entered into co-partnership for a year with *R.* & *A.* two stockholders, in conducting the concern, *R.* & *A.* to make the necessary advances in money, and receive interest. On the 1st of *May,* 1813, the company appointed *R.* their general agent, large advances being necessary to carry on their business. No salary was agreed on ; but a previous agent had received a salary of $1250 per annum, and this was no more than a reasonable compensation for *R's* services while agent, until the factory was destroyed by fire on the 3d *May,* 1815. *R.* continued agent from the 1st *May,* 1813, till his death, in *August,* 1821 ; residing in the vicinity of his principals, who occasionally met at his house. During the period of his agency, he made necessary cash advances in and about carrying on the concerns of the company to more than $100,000, which he had charged in an account of more than 500 items ; and had received in cash nearly the same amount, which he credited in the same book in upwards of 700 items. He never rendered any account to the company ; nor did he apprize them that they were in arrear until the 2d *January,* 1819, when he was requested by one or more of the directors to present his account : which request was afterwards repeated by one or more of the directors, but never complied with. On his death, his personal representative claimed interest on the advances, as well as on the salary or compensation for his services ; *held,* that she should recover interest upon the advances to the 2d *January,* 1819, when he was requested to make out his account ; but not after ; *held,* also, that she should not recover interest on the salary.

As a general rule, interest is allowable on cash advances, though they rest in the form of a mutual, current, unliquidated account.

Whether such charges come strictly within the definition of an account ? *Quere.*

Interest is not allowable on an unliquidated account for work and labor.

The English and American cases examined at large by the court and counsel in reference to the following heads :

1. Interest on money lent ;
2. On money paid, &c or advanced ;
3. On money had and received ;
4. On money due for work, labor and services ;
5. For goods, &c. sold and delivered ;
6. On open, current, unliquidated accounts ;
7. On an account stated, or balance struck ;
8. The general principles upon which interest is chargeable.

---

[*] This cause was decided at *August* term, 1824. Vid ante, 387, S. C.

The cause requiring the examination of long accounts, it was referred at *January* term, 1822, heard by the referees on the 18*th February*, of the same year, and at various subsequent days, and submitted to them on the 21*st March*, 1822 ; two of whom reported for the plaintiff $14,913.40, after deducting $2317,53, being the amount agreed between the parties to be due from *John Reid*, the intestate, to the defendants, on an account current between him and a joint concern, in which the defendants and *John Reid* and *Robert Alsop* were interested.

It appeared in evidence before the referees, that the defendants' factory was situated in the town of *Sandlake*, in the county of *Rensselaer*, about ten miles from the city of *Albany*. *John Reid*, the intestate, was agent for the defendants from the 2*d June*, 1812, to the time of his death in *August*, 1821, and, during the time of his agency, resided in the city of *Albany*. The factory of the defendants was in actual operation from the 1*st May*, 1813, to the 3*d May*, 1815, when it was destroyed by fire, and after this, no glass was manufactured by the defendants. The plaintiff produced an account current, showing a large balance due to her for principal and interest. The debit side of the account contained 527 items, each of which was for cash advanced, or paid out by the intestate, for the purpose of keeping the factory of the defendants in operation. The credit side of the account contained 787 items, each of which was for cash received by the intestate, for glass made at the factory, and for other property of the defendants, sold by the intestate on their account. The whole amount of cash advanced and paid by the intestate, for the defendants, between the 1*st May*, 1813, and the time of his death, and charged to them, was $107,579,74. The amount received by him during the same time, and credited to the defendants, was $100,099,88.

The plaintiff proved an actual advance, or payment of cash, in every instance, as charged in the debit side of her account, with the exception of four items, amounting in the whole, without interest, to $288,99.

The referees charged the plaintiff, in making up their report, with $105,11, being the amount, exclusive of interest, of two debts due the defendants; on the ground that she had not shown that the intestate used due diligence in collecting them.

The defendants were charged with the sum of $3125, for the intestate's salary as agent, from the 1st *May*, 1813, to the 1st *November*, 1815, at the rate of $1250.

They were also charged with the necessary disbursements of the intestate in and about the business. An interest account was also stated, in a general account current, in which the defendants were charged with interest from the time of the advance, or payment of each sum of money, to the 4th day of *May* term, 1822, and credited with interest on each sum of money received, from the time of its receipt till the same 4th day of *May* term. Interest was also calculated on the items of salary, from the end of the year when the salary became due, to the same time. The balance of interest thus found on all the debits proved and receipts admitted before the referees was $10,348,08.

The balance of principal which the referees found due at the date of their report was $6882,91.

In *March*, 1806, the factory of the defendants went into operation. In that month, the defendants appointed *James Kane*, of the city of *Albany*, their agent, by a resolution in the following words : " *Resolved*, that *James Kane* be, and he is hereby appointed agent." *Kane* continued to be the agent of the defendants from the time of his appointment till the intestate's appointment. In the month of *April*, 1809, the defendants leased their factory, together with all things in, and attached to it, for 3 years, from the 1st *May*, 1809, to five stockholders. *Kane*, one of the lessees, was their agent, and resided the city of *Albany*, during the time of his agency. At the expiration of this lease, namely, on the 1st *May*, 1812, the intestate, *Robert Alsop*, and the defendants entered into a co-partnership under the name of *John Reid & Co.* for the purpose of manufacturing glass at the defendants' factory, which was to continue for one year: *Robert Alsop* superintended the business at the factory, and

resided there. The intestate resided in the city of *Albany*; and made the necessary advances of money for the concern, and received the proceeds of the sales of glass, and other property, in the same way as he advanced and received money while agent of the defendants. By the articles of this co-partnership, the stock and materials of the defendants on hand on the 1*st May*, 1812, and which amounted as per inventory then made, to $13,997,87, was deemed, by the parties, an advance to the partnership fund; and an equal quantity of materials was to be returned to the defendants on the 1*st May*, 1813 ; or the deficiency charged to the intestate and *Alsop*. When this co-partnership ended, viz. on the 1*st May*, 1813, an inventory was taken of all the materials and stock then owned by the defendants. They were found to amount to $13,186,58. The accounts of the business of this co-partnership were rendered by the plaintiff to the defendants and *Alsop*, during the reference, and adjusted by mutual consent, and the balance sheet produced on the hearing. A balance of this concern was struck as of the 1*st January*, 1815. In the liquidation of the account of this concern with the intestate, interest was debited and credited, and allowed by the defendants in the same manner as it was debited and credited in the general account current of the plaintiff before mentioned, and there was a balance of interest thus allowed to the intestate of $1393,10. By the articles of co-partnership, it was agreed that interest should be allowed on the amount of the inventory, and on all monies advanced by *Reid & Alsop*, who, by the articles of co-partnership, were to make all necessary advances of cash to carry on the business ; and it was also expressly reserved by the defendants, at the time of the adjustment of the partnership concern, that the question of interest in this cause should not be affected by that adjustment, any further than the articles of co-partnership and the account made in pursuance of them affect that question. A balance of principal and interest was found due to the defendants from the intestate on the 1*st January*, 1815, of $1531,38, and, by agreement of the parties, this sum, together with the interest to the 4*th* day of *May* term, 1822, being $786,15, was to be deducted

from the amount found due from the defendants to the plaintiff; but the interest on that balance, from the 1st *January*, 1815, was not to be deducted, unless interest was allowed on the accounts between the parties in this suit.

When the intestate was first appointed agent, it was by a resolution in the following words : " Resolved, That *John Reid* be, and he is hereby appointed agent for this corporation"—and every subsequent appointment was in the same words, or words of like import. When the intestate took the active agency of the factory, in *May*, 1813, the stock, materials and funds of the defendants were insufficient to keep the factory in operation, and large advances were required for that purpose.

No specifick agreement, between the intestate and the defendants, relative to his salary, was proved. It was, however, fully proved, that $1250 per year, exclusive of disbursements, was a reasonable compensation for his services as agent ; that *Kane*, who preceded him as agent for the defendants, was allowed by them, on the settlement of his accounts, the same sum per year, for salary, besides expenses, although there had been no agreement between him and the defendants on the subject; and that *Kane* had been allowed the same compensation by the lessees, some of whom were directors of the company when the intestate was appointed their agent, and while he continued to be so. The proceeds of all glass manufactured by the defendants, after the 1st *May*, 1813, were received exclusively by the intestate. All the accounts of the corporation, and book of minutes, were kept by the intestate. The general account current produced by the plaintiff, was rendered to the defendants on the 12th day of *October*, 1821. An account of the sales of glass received and sold by the intestate, on account of the defendants, was rendered to them at the same time, and no account current, or account of sales, was ever before rendered to them.

The whole of the accounts were not made out until after the death of the intestate, owing to his habits, though several attempts were made to complete them.

It was admitted, that on the 2d day of *January*, 1819, when there was a meeting of the directors at his house, the intestate stated to the directors that there was a balance due to him from the defendants. Then one or more of the directors asked him to make out his account, and present it to the directors ; and since that time he has been asked for the account by one or more of the directors. These requests were made by the directors, individually, but no resolution or entry was made, concerning the intestate's accounts, on the minutes. At a meeting of the directors, on the 27*th* day of *December*, 1817, the subject of the accounts of *James Kane* was agitated before the board, and the following entry was made in the book of minutes : " *John Reid* brought the subject of *James Kane's* demand against the company before the directors, and, after various views of the same, it was agreed, that Mr. *James* and *John Reid* be appointed a committee to liquidate and adjust the same." On the 27*th November*, 1806, a resolution was passed, appointing a committee to audit the accounts of *Kane*; also, on the 14*th April*, 1807 ; also, on the 23*d* day of *September*, 1807 ; and, also, on the 23*d February*, 1809.

The referees were unanimous in opinion, that there was due the plaintiff, at the date of their report, for principal, the sum of $6382,91 ; but they differed in their opinion on the subject of interest, the referee dissenting from the report, being of opinion that interest ought to be calculated only to the 1*st* day of *January*, 1816, and the two referees making the report being of opinion that it should be calculated to the 4*th* of *May* term, 1822.

The question of interest was the only one raised upon the case ; and it was agreed, by the parties, that this Court should settle the principles on which it should be calculated, and to what time, and refer it again to the referees, to report the amount in addition to the principal due ; that their reports be deemed as one, and considered as made of *May* term, 1822 ; but no judgment to be entered, until 4 days in term shall have elapsed, after the making of such additional report.

ALBANY,
October, 1824.

Reid
v
Rensselaer
Glass Factory

*B. F. Butler*, for the defendants. 1. Whatever may be the plaintiff's rights as to interest, upon other parts of this account, it is impossible that she should be entitled to it on the charges for the salary of the intestate. The general rule is, that interest is not recoverable on uncertain demands, where damages are recoverable, and where the amount is unliquidated ; and if there is any case in which the rule should be applied, it is in an action for work and labour where the amount is unliquidated, especially when that amount is to be settled on a *quantum meruit*, in the same action where the interest is sought to be recovered. Here the amount due to the intestate, for his services, was wholly undetermined by the parties. There was no agreement between them on the subject. The referees heard the evidence, and fixed the amount of compensation.

*Reid* never demanded payment for his services ; and not doing this, the defendants had a right to infer that he had paid himself out of the moneys which he had received. At most, therefore, interest should be allowed only from the commencement of the suit.

That the referees erred, in allowing interest on the salary, he cited *Sweatland* v. *Squire*, (2 *Salk.* 623) *Trelawney* v. *Thomas*, (1 *H. Bl.* 302) *Walker* v. *Bayley*, (2 *B. & P.* 219) *Skirving* v. *Stobo*, (2 *Bay's Rep.* 2.)3) *Gammell* v. *Skinner*, (2 *Gall. Rep.* 45) *Chit. on Bills*, 538, *Phil. ed.* In *Gammell* v. *Skinner*, which was a libel for mariner's wages, on the instance side of the *Admiralty*, Judge *Story* says, " There is no difference, in this respect, between the practice of our Courts of common law and that of the Admiralty. In the latter, interest is generally allowed from the time of a demand made for the wages ; and if no special demand is proved, from the time of the commencement of the suit."

2. The referees erred in allowing interest on the general account. This was wholly unliquidated. On the 1*st May*, 1813, *Reid* took charge of the factory, as agent, and from that time to *May*, 1815, when the factory was destroyed, made advances of money, carried on the establishment, and received all the avails of glass manufactured. There is no evidence of any agreement, between the parties, as to the

allowance of interest, nor any circumstances from which such an agreement can be inferred. *Reid* advanced to the amount of $104,000. He received about 100,000 ; and the balance due him on advances was short of $4,000; which, with $3125, for salary, made the sum of $6882, the balance of principal found by the referees. The whole balance found by them is $17,230, viz. $6882 for principal—$10,348 for interest ; the interest on the salary being $1600, and on the cash account $10,300. The balance of interest due on the cash account is more than twice the amount of the principal. This account was not stated, nor the balance demanded, till the 12*th October*, 1821 ; and until that demand, at any rate, the plaintiff was not entitled to interest on this part of the account.

A recovery of interest must, to be sure, depend very much on the circumstances of the case ; but the general rule is, that it is not allowable on a running, unliquidated, open and mutual account, until such account is stated by the parties, or, at least, rendered by one party to the other, which is considered a liquidation if assented to, or if not objected to within a reasonable time. The only exceptions are, 1. Where an expresss agreement to pay interest has been made and proved : 2. Where an intent to pay interest can be inferred, from the course of dealing between the parties, or the particular custom of the trade or place : or, 3. Where there has been fraudulent conduct, or a vexatious detention of the debt. (*Borret* v. *Goodere*, 1 *Dick.* 428. *Liotard* v. *Graves*, 3 *Caines' Rep.* 226. *Anonymous*, 1 *John. Rep.* 315. *Newell* v. *Griswold*, 6 *John. Rep.* 45. *Holliday* v. *Marshall*, 7 *id.* 211. *Kanes* v. *Smith*, 12 *id.* 156. *Walden* v. *Sherburne*, 15 *id.* 409. *Consequa* v. *Fanning*, 3 *John. Ch. Rep.* 601. *Selleck* v. *French*, 1 *Con. Rep. N. S.* 32. *Williams* v. *Craig*, 1 *Dall. Rep.* 313. *M'Connico* v. *Curzen*, 1 *Call's Rep.* 358, *with the cases already cited to the first point.*)

The principle of the rule, that where no agreement to allow interest has been made, nor can be inferred, the parties are not to be charged with it, applies with peculiar force here. Interest is in the nature of damages, for not paying the balance due ; and is it fair that the party should be called

on for such damages, when it is seen that he was ignorant of the amount of the balance; or, indeed, that any balance whatever was due? It was impossible for the defendants to know, until the settlement, whether *Reid* had advanced his own money or theirs. He had the custody of the books, could alone state them, and it was impossible for the defendants to know the situation of the accounts until *Reid* presented them. If the rule is right between merchants, *a fortiori*, it is so here. Among merchants, each party keeps the accounts, and each may know their state with reasonable accuracy.

But it was insisted, before the referees, and will, doubtless, be contended here, that the rule denying interest on unliquidated accounts is confined to those for *goods sold*, and other mercantile dealings between merchants and their customers; and that interest should be allowed here, on the ground that the debits were made up of moneys advanced for the use of the defendants. In support of this, *Liotard* v. *Graves*, (3 *Caines' Rep.* 226) was cited. In that case, the Supreme Court departed from the rule previously established by adjudged cases in *England ;* for, though there was a loose *dictum* in *Bunbury*, and one or two adjudged cases in other books, in which it was said that interest was allowable on money lent or advanced, without any agreement, express or implied, yet the general current of the authorities was otherwise ; and when *Liotard* v. *Graves* was decided, (*August*, 1805) the law was settled, in *England*, against the allowance, as was afterwards declared in *Calton* v. *Bragg*, (15 *East*, 223) where all the authorities are cited. The Court there held that interest is not allowable on money lent or advanced, even where the whole advance is of one sum, unless there is a contract for its allowance expressed, or to be inferred from the circumstances. The propriety of allowing interest in *Liotard* v. *Graves*, under the circumstances of that case, is not disputed. Its application to the present case is, however, denied. The Court did not decide, nor did they mean to decide, that, in all cases of money advanced, interest should be allowed. They only meant to say, that where a person requests another to lend him money, or advance it for his use, having no funds in his hands, it is so

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

much out of the ordinary course of mercantile business, that an agreement to pay interest is to be presumed. They did not intend to lay down a rule of universal application, without regard to circumstances. Accordingly, in *Pease* v. *Barber*, (3 *Caines' Rep.* 266) afterwards determined, Chief Justice *Kent* admitted, that allowing interest must depend much upon particular circumstances, even in that case, which was an action for money had and received. The advances in *Liotard* v. *Graves* were specifick, when the defendant had no funds in the plaintiff's hands. They were for prosecuting an appeal, and out of the ordinary course of business between the parties—not like this, which is the case of an agent making advances at his own discretion, on the strength of receipts either actual or expected, under his general authority, and without specifick request. No settlement was necessary, to enable *Graves* to ascertain whether he was indebted for those advances. Being specifick, and for a special purpose, they stood precisely on the same ground, so far as the question of interest-was concerned, as if there had been no other dealings between the parties. Besides, *Livingston*, J. mentions, that there had been previous accounts rendered, on which interest had been cha ged and allowed by mutual consent. In this case, beside the distinguishing circumstances already noticed, there are a series of advances on one side, and receipts on the other, the whole account, consisting of moneys debited and credited, constituting a running cash account, at the same time that it was utterly impossible for either party, and particularly for the defendants, to ascertain how the balance stood, until the account was stated.

This Court has itself departed from the broad rule in *Liotard* v. *Graves*. It did so in *Kanes* v. *Smith*, (12 *John.* 158) which cannot be distinguished from this case. The *Kanes*, at *New-York*, were to advance monies in purchasing cargoes ; while the *Smiths*, at *Madeira*, were to send wines to the *East Indies*, to be sold there, the *Kanes* to receive the monies, and reimburse themselves. They advanced more than they received, and claimed interest. The monied transactions between the parties were precisely like those in this case. But interest on the advances was denied.

This was followed by other decisions of this Court and the Court of Chancery, to the same effect. (*Walden* v. *Sherburne*, 15 *John. Rep.* 409. *Consequa* v. *Fanning*, 3 *John. Ch. Rep.* 601. *Campbell* v. *Mesier*, 6 *John. Ch. Rep.* 21.)

So, too, in the other states, although I admit there has been a general inclination to depart from the English rules, so far as to allow interest on money lent, or money had and received; still the Courts, which have gone farthest on the subject, have always confined the allowance to cases where the the amount was certain, and to the peculiar equity of the particular case. They have never given interest on an unliquidated cash account, where the defendant's conduct was fair. The Supreme Court of *Massachusetts* allowed interest in *Fowler* v. *Shearer*, (7 *Mass. Rep.* 24;) *Wood* v. *Robbins*, (11 *id.* 504;) *Weeks* v. *Hasty*, (13 *id.* 218;) but refused it in *Porter* v. *Bussey*, (1 *id.* 438;) and *Storer* v. *Storer*, (9 *id.* 37.) In *Winthrop* v. *Carleton*, (12 *id.* 4,) it was allowed only from the commencement of the suit; and in *Wyman* v. *Hubbard*, (13 *id.* 232,) it was denied altogether. These are cases of money paid or money had and received; and it will be seen by an examination of them, that if the present case was to be determined in *Massachusetts*, there could be no question that interest would be denied.

The Superior Court of *Connecticut* allowed interest in *Selleck* v. *French*, (1 *Con. Rep. N. S.* 32;) but *Swift*, Ch. J. limits the rule in that very case, so as to exclude this; and in *Thompson* v. *Stewart*, (3 *id.* 171,) the Court denied interest on principles which apply here.

*Pennsylvania* has gone farther than any other state in allowing interest for monies. (*Rapelie* v. *Emory*, 1 *Dall.* 349, and note to that case. *Lessee of Dilworth* v. *Sinderling*, 1 *Bin.* 494. *Commonwealth* v. *Crevor*, 3 *id.* 121.) But the Supreme Court of that state denied interest in *Jacobs* v. *Adams*, (1 *Dall.* 52;) and limited its allowance in *Brown* v. *Campbell*, (1 *Serg. & Rawle*, 179) on the very principles we contend for here.

In *South Carolina*, the Judges find fault with the English rule, and allowed interest in *Goddard ads. Bulow*, (1 *Nott & M'Cord*, 45;) and *Thompson* v. *Stevens*, (2 *id.* 493;) but in

deciding the last case, the Court lay down the rule in terms and for reasons which would deny interest here; and they accordingly denied interest in *Moore* v. *Treasurer*, (1 *id.* 214.)

It may safely be said, that none of the American cases are in favor of allowing interest in this case; but that when all the cases of each Court are considered in connexion, they lay down principles fatal to the present plaintiff's claim, if we except, perhaps, *Lessee of Dilworth* v. *Sinderling*, (1 *Bin.* 494.)

Whether, therefore, the case be decided by our own decisions, by those of the English Courts, or a majority of American Courts, the result is the same. In *England*, interest is not allowed on monies advanced or received, in any case, unless there is a contract expressed or to be inferred. In most of the *United States*, interest is allowed on monies paid, advanced or received, though there be no contract expressed or to be inferred, where, either, 1. The advance is of a single sum, or all the advances are on one side, and there are no mutual accounts to be settled; or, 2. Where the money has been obtained by fraud, or unreasonably withheld, thereby placing an account for monies, when running and unliquidated, on precisely the same grounds with other running accounts.

We never had the accounts till *October*, 1821. The whole business remained in the dark for years; though there was no excuse for the delay. As agent, it was *Reid's* duty to have accounted annually; at all events, when the factory was destroyed, and the business suspended; yet he continued to keep back the accounts, notwithstanding the request to make them out (in *January*, 1819) until *October*, 1821, 6 years after the business was at an end. The excuse attempted (his habits) instead of extenuating, aggravates the neglect. It is not to be tolerated, that an agent shall withhold his accounts for such a length of time, leave his principal without information; and then set up an enormous claim for interest. Still more unjust is it to give the intestate a reward for his neglect, and visit upon the defendants the effect of his misconduct or misfortunes.

The default is all on *Reid's* part ; yet, by the report, the defendants suffer, and he gains by his laches. A rule so manifestly unjust cannot be supported. The rules of Courts of Equity, as applied by them to agents, may properly be resorted to in this case. These are, 1. That where an agent has received monies, and has promptly exhibited his accounts, and there is no delay on his part, the Court never charge him with interest on monies in his hands ; 2. But where he has delayed rendering his accounts, and is guilty of laches, or other misconduct, the Court of Chancery will charge him with interest on the balance in his hands ; 3. And though a balance may be due him, if he has been guilty of laches, and has not made out his accounts seasonably, he will be deprived, not only of interest, but of commissions, poundage, &c. (*White* v. *Lincoln*, 8 *Ves.* 363. *Lady Ormond* v. *Hutchinson*, 13 *Ves.* 53. *Pearse* v. *Green*, 1 *Jac. & Walk.* 135.) Had we filed our bill against *Reid* in 1821, for an account, and the balance had been found as here, a Court of Chancery would not have given him interest.

For these reasons, the defendants claim that the plaintiff was not entitled to interest until *October*, 1821, when they first became acquainted with their indebtedness.

3. If, however, it should be thought that the intestate was entitled to state an interest account from the commencement of his advances, the question then arises—for how long shall the plaintiff be entitled to claim interest ? for the whole period, as the referees have decided ? or for a stated period ?

We contend that it should be stopped at a reasonable time after the closing of the agency. The factory was destroyed in *May*, 1815 ; and the business was essentially, and, to all practical purposes, closed in *November* of that year. *Reid* charges his salary only to that time ; and should have stated an account the 1*st January*, 1816. Not having done so, interest should cease from that time. At all events, it must be stopped on the 2*d January*, 1819, when the intestate was called upon for his accounts. The authorities and course of argument on the second point apply to this ; and *Dent* v. *Dunn*, (3 *Campb. Rep.* 296) is in point.

*S. A. Foot*, contra. The intestate stood in the relation of a trustee or steward, managing all the concerns of the defendants, who were a corporation extensively engaged in the manufacture and sale of glass. The plaintiff's account consists of more than 500 items, involving an amount of upwards of $100,000. Both the ability and fidelity of this agent, were most manifest throughout the whole term of his engagement; and were not impeached as to any particular, in any material degree. It is now said, that no account of his agency could be procured from him on account of his bad habits. This is an entirely gratuitious assertion. The case says, that no account could be procured on account of *his habits*, without distinguishing whether they were those of piety, or inebriety. It is also said, that interest ought not, at any rate, to be allowed after the 2d *January*, 1819, because an account was then demanded. True, but this was by an individual director or directors, after a corporate meeting had broken up, without adopting any resolution on the subject. It was not a request, then, because not a corporate act. It was no more, than if the request had been made by a stranger. Nor is it surprizing that the interest should exceed the principal due, when we look at the enormous amount of the whole account.

The law of interest, has undergone very great changes. The *stat.* 3 *H.* 7, allowed interest on a judgment affirmed upon a writ of error; and yet the Judges were so conscientious as to refuse carrying it into effect. Till 37 *H.* 8, it was unlawful to demand interest; but after the simplicity of barter went off with the middle ages, it began to be allowed on certain demands, and has been gradually extending to others ever since. The statute 37 *H.* 8, was the first which tolerated the demand; and from that year till 1812, the decisions of the English courts were strangely contradictory as to the cases in which it might be demanded. If we compare the English and American cases, it will be found that there is no branch of jurisprudence involved in greater obscurity and contradiction. There are but two Judges who have undertaken to lay down any general rule on the subject. These are Ld. *Ellenborough*, and Mr. Justice *Spen-*

*cer.* The rule of the latter will be found in *Liotard* v. *Graves*, (3 *Caines' Rep.* 226.) He there says, (*p.* 234) " For goods sold and delivered, unless there be evidence of an .agreement to pay interest, none is recoverable until a liquidation of the account takes place. If an account be transmitted by a creditor, and acquiesced in, or assented to by his debtor, it becomes thereby liquidated, and interest is allowable. On money advanced interest is legally demandable. By the usage of a particular trade, interest may be allowed." *De Haviland* v. *Bowerbank*, (1 *Campb. Rep.* 50) contains Lord *Ellenborough's* rule. He says, "Interest ought to be allowed only in cases where there is a contract for the payment of money on a certain day, as on bills of exchange, promissory notes, &c. ; or where there has been an express promise to pay interest ; or where, from the course of dealing between the parties, it may be inferred that this was their intention ; or where it can be proved that the money has been used and interest actually made."

This rule does not embrace money advanced, or money lent, as such. The case is quoted in *Newell* v. *Griswold* (6 *John. Rep.* 45) to shew merely that interest is not allowable on an unliquidated account for goods sold. *Campbell*, the reporter, appends as many as 20 cases to *De Haviland* v. *Bowerbank*, as supporting the rule, that interest is not allowable for money had and received ; and it is remarkable that they will just as well support any other rule. Another case decided by Ld. *Ellenborough* is *Crockford* v. *Winter*, (1 *Campb.* 128) which was an action for money had and received, grounded on the fact that the money was obtained by fraud, which was plainly made out in evidence ; yet interest was denied. But this Court say, in *Amory* v. *M'Gregor* (15 *John.* 33) that if there be any *fraud* or gross misconduct on the part of the defendant, interest should be allowed ; and that too in a case where interest would, by no means, be allowed without fraud ; a position directly at war with the case of *Crockford* v. *Winter*. In *Kingston* v. *M'Intosh* (1 *Campb.* 518) the Court deny interest on a policy of insurance ; and overrule the practice of *Buller*, J. mentioned in *De Bernales* v. *Fuller* (2 *Campb.* 427 ;) whereas a case in the

1 *John. Rep.* 315, decides directly the reverse. In *Gordon* v. *Swan* (2 *Campb.* 429 *in note*) and *Atkinson* v. *Braybrooke* (4 *id.* 380) Ld. *Ellenborough* refused interest in an action for goods sold to be paid for at a particular day ; and in an action on a foreign judgment ; though in *Mountford* v. *Willes* (2 *B. & P.* 337) it was decided that a debt for goods sold does draw interest after the credit has expired. Yet that case must, it seems, yield to Ld. *Ellenborough's* rule, which is now in daily practice in this state, as to goods sold. In *Thomas* v. *Weed* (14 *John.* 255) what this Court say, in delivering their opinion, is in direct hostility again to Ld. *Ellenborough's* rule in relation to allowing interest upon money had and received. In *Harris* v. *Benson*, in 5 *Geo.* 2 (*Str.* 910) the K. B. decided that interest was not allowable on money lent ; but in *Trelawney* v. *Thomas* (1 *H. Bl.* 303) the C. B. overruled the K. B. on that very point. In *Calton* v. *Bragg* (15 *East*, 223) in 1812, the decision denied interest on money lent, whereas both money lent and money had and received, are now put on the same footing by our cases, and both carry interest. In *Trelawney* v. *Thomas*, there was a discussion of considerable length. The demand was for money laid out, and for day wages ; and the Court allowed interest on the former, but denied it as to the latter. In *Walker* v. *Constable* (1 *B. & P.* 307) and *Tappenden* v. *Randall* (2 *id.* 467) the C. B. refused interest for money had and received ; but in *Pease* v. *Barber* (3 *Caines, Rep.* 266) this Court decided directly the reverse. Which is the most reasonable?

We can turn with pride from the English decisions to those of this Court. It will be found that our own Judges have decided consistently, and entertained enlightened views of the policy and nature of a circulating medium. The principal objection against our recovery of interest is, that our account is open, and that no demand was made till after the intestate's death. In other words, the defendants claim an exemption from the general rule, which is against them, on the ground that the advances of money rest in open account. This is mainly a question of principle. *Liotard* v. *Graves* is certainly much in point. That, also, was a case

in which no account was rendered. It has been assailed, and its application denied in very strong terms. In reply, I shall merely take the words of the several Judges who delivered opinions. That case came before the Court with a view to the settlement of abstract principles, as a guide to referees who had the subject before them. *Kent*, Ch. J. said, (*p.* 245) the account was not liquidated, but a naked account current ; and interest was allowable only on such items in it as were made for moneys advanced.

The decision of that case, then, was in reference to an account exhibited just before the suit was brought, as here. *Spencer*, J. (*p.* 234) said he should content himself by laying down principles, and leave the arbitrators to make the application, and then advances the general rule which I have mentioned. *Thompson*, J. says, " With respect to interest on the plaintiffs' account, it appears to me they had a right to charge it on the money advanced. The account cannot be considered as settled, and on that ground carrying interest. It is merely an account current between the parties, and, unless some usage or practice is shewn to warrant the allowance, I should think interest ought not to be calculated except on the money advanced." *Livingston*, J. says, " If there be no special agreement between the parties, or usage of trade between *Amsterdam* and *New-York*, to the contrary, it ought to be allowed on all moneys advanced from their respective payments, and on the goods supplied after such time as is conformable to the course of trade between the two countries."

What, then, is the rule established ? Why, that interest is not allowable on an unliquidated account, without an agreement, express or implied, *excepting, however, an account for money advanced, whether liquidated or unliquidated.* Within this exception, interest is due here. *Livingston*, J. was mistaken, in supposing an account previously rendered. The Court do not place themselves on this ground. Had an account been rendered, interest would have been allowed on the whole, as a liquidated account, even for the goods sold, after 3 months, had there been no objection. So material a circumstance could not have esca-

ALBANY,     ped both Court and counsel. Then we come exactly within
October, 1824. the principle of that case, when we prove actual advances
———         as charged in our account. Is not this authority conclu-
Reid        sive? If fully respected, it certainly is so.
v.
Renselaer      But it is said, that in *Pease* v. *Barber*, (3 *Caines*, 156) this
Glass Factory. Court overrule *Liotard* v. *Graves*. That case decides,
merely, that no objection can be made to interest, from the
form of the action, and that cases must depend on circum-
stances.

[*Butler.* I cited that case to establish the latter position
only.]

*Foot.* Before considering *Kanes* v. *Smith*, (12 *John.* 156)
I would ask, what are the general grounds upon which the
allowance of interest depends? There are, we conceive,
three great principles upon which it may be claimed. 1. An
agreement, either expressed or inferrible from the circum-
stances. Among other examples, under this head, is that of
an account sent to the debtor, and not objected to within a
reasonable time. Another is, the custom of a particular store
at which he trades. 2. A second general ground of the al-
lowance is, the default of the party in omitting what he is
bound to do, either by express contract or legal obligation,
as upon an express agreement to pay money, at a particular
day, for goods, or other consideration, at the expiration of
the term of credit, or an implied agreement to pay money,
which is received, to another's use, as in *Slingerland* v.
*Swart*, (13 *John. Rep.* 255) and *Lynch* v. *De Viar*, (3 *John.
Cas.* 310) or the legal obligation to pay the price of goods,
wrongfully converted, to the right owner, which is recov-
ered in an action of trover. Neither of these principles
reach the case of interest for money lent or advanced; and
yet the books are full of cases where it has been allowed,
not merely from the time of default to pay, on demand.
This was never made a criterion in any case. What is the
reason of this? When a note is given, or money lent or
advanced, generally, without time of payment, it is legally
due from the date of the note, loan, or advance. In other

words, it is due presently ; and a suit may be immediately brought. (*Thompson* v. *Ketcham*, 8 *John. Rep.* 189). 3. The third principle, then, is, that interest is allowed in these two cases, upon the nature of money, and in reference to its use. It is the circulating medium, having a fixed value by law, and when out of one's possession, he loses 7 *per cent.* the legal interest. Hence it should bear interest from the time of the loan or advance. It commands every thing a man has. It gives profit, and may be used in a thousand ways, to make it yield the legal interest. Not so as to merchandize. This lies, for a time, as a dead weight upon the hands of the merchant. Its conversion into money is a work of delay, and depends upon circumstances. In every one of the cases where interest is allowed, on the ground of an account liquidated, it was for things other than money. What is an account ? Not a list of cash advances ; but regular entries in relation to dealings of another nature. The books of entry constitute an item of proof in establishing the account before a jury or referees. Not so as to cash advances ; because entries, in relation to these, are not an account, in any sense of the word. (*Vosburgh* v. *Thayer*, 12 *John. Rep.* 461. *Case* v. *Potter*, 8 *id.* 212.) You cannot prove them as an account, but only one by one, in the ordinary modes of proof.

It is said that interest is not due upon an account unliquidated ; and we agree to this, as a general rule. The gentleman cites a great variety of cases to establish and illustrate it, and said that in *Consequa* v. *Fanning*, (6 *John. Ch. Rep.* 601) the late Chancellor denied interest on cash advances. This is a mistake. There were no cash advances in the case. *Weeks* v. *Hasty*, (13 *Mass.* 218) is a fair specimen of the rule which allows interest for money paid. The demand was for money paid to *J. B.* for account of the defendants ; and interest was allowed from the time of the payment. No special circumstances are considered ; but the marginal note is, simply, that " interest was allowed on money paid, where the defendant suffered judgment to go by default."

*Thompson.* v. *Stewart,* (3 *Con. Rep. N. S.*) is said to be against us ; but that was a question whether interest should be allowed on the avails of goods sold by one having a lien, which lien continued ; and interest was denied during its continuance. *Borret* v. *Goodere.* (1 *Dick.* 428) was the case of an open mutual account. The rule laid down in *Anonymous,* (1 *John. Rep.* 315) relates to unliquidated damages. *Newell* v. *Griswold,* (6 *John. Rep.* 45) was an unliquidated account for goods sold ; and *Holliday* v. *Marshall,* (7 *id.* 211) the case of unliquidated damages. The rule in relation to unliquidated accounts, is too limited to reach the point in controversy here. Numerous cases may be supposed where it cannot apply. Take a single loan or a single advance, and the lapse of a year ; ought not interest to be allowed for the whole time ? Would not this make an account equally as an hundred advances, or how many items must an account consist of ? Would this Court ever refuse interest even for goods sold, after a day of payment fixed by the parties ? The gentleman admits that there is an inclination in the American cases to depart from the English rule, by multiplying the instances in which interest shall be allowed. Whether this be so or not, it may be difficult to determine ; but we take the admission.

The case of *Kanes* v. *Smith,* (12 *John. Rep.* 156) will be found, on a full examination, not to oppose *Liotard* v. *Graves,* (3 *Caines' Rep.* 226.) It is true, there was a claim of interest, on advances, which was denied ; but this was by reason of a special agreement in the case, upon which a question of construction arose ; and the decision is founded on the circumstances of the case growing out of that agreement. The Court thought the whole case negatived any intention to allow interest. The defendant was found not at all in default as to fulfilling his agreement. One item on the debit side of the *Kanes* was the amount of the goods. Another was for moneys advanced, though it will be seen by the case that none was, in fact, advanced. Other charges were for freight and commissions on sale. The plaintiffs were to be reimbursed for all their expenses by the proceeds of wines in the *East Indies,* over which they had the entire control, which they sold and kept an account of ; and upon the whole, it was thought un-

fair to allow interest on more than the balance, and that only from the time when they had rendered an account, and ascertained the balance. From that time only could it be deemed fairly due. The operation was on a very broad scale, and of an uncertain nature. The accounts were like those in *Walden* v. *Sherburne*, (15 *John.* 409) *Consequa* v. *Fanning*, (3 *John. Ch. Rep.* 601) and *Campbell* v. *Mesier*, (*id.* 24.) I can find no charge of cash advanced in *Walden* v. *Sherburne.* In *Campbell* v. *Mesier*, interest was allowed, and the remark of the Chancellor, that money paid carries interest after demand and default in payment, is true, but it does not go far enough. It is allowable from the time of the advance ; for the money is then due.

It is said, among other things, that the intestate should have presented his account in *January*, 1816, in order to claim interest. What rule required this ? The gentleman admits there is none, but refers this, with several of his arguments, to the special circumstances of the case. With deference, the doctrine of peculiar circumstances is, in most cases, little better than legal quackery. Philosophy requires us to take a higher and broader view of human transactions ; to look at them on a large scale, and govern them by general rules. The contrary was the rock on which the celebrated *Jefferies* foundered. It goes to the root of all legal science, and admonishes us to burn our libraries.

All the monies received were promptly applied ; and what benefit could the defendants derive from an exhibition of the account ? Have they lost any thing by withholding it ? It may be said, perhaps, that they would have paid, but they had, by a formal resolution, abandoned the concern. The cases cited from Chancery are those of receivers or trustees, where the Chancellor denied interest because they were not in default.

It is said that both parties expected the agent would be paid out of the receipts, and even that he had no authority to make advances ; but *Reid* was a general agent confined by no limitation ; large advances were required. The company understood, or, which is the same thing, were bound to

understand this perfectly. It was known by them that the intestate was making advances ; the books were theirs, and, beyond all doubt, they examined and understood nearly the amount of the arrears. If they omitted this, it was their own fault, for which the agent should not suffer. If knowledge were necessary, the Court will imply that it existed. Could the company have expected that our advances should be gratuitous ? This would be extravagant ; and the strongest expectation of the kind could make no difference. A man sends produce to market ; puts it in deposit ; and takes up money upon it. No doubt he expects it will sell and meet the advance. This is the expectation of both parties ; but was it ever heard that interest should be denied upon the advance, because the avails of the sale happened to fall short of the loan.

The *Lessee of Dilworth* v. *Sinderling*, (1 *Bin*. 488) settles this case upon authority. The precise questions here, arose in that case. It was there objected that the account of advances remained open. All the decisions upon the subject were canvassed ; the case was decided on full argument ; and with very great deliberation.

*Butler*, in reply. I do not rely upon the English authorities in relation to money lent or advanced. I merely adverted to them in order to shew how matters stood in *England*, and for this purpose cited *Calton* v. *Bragg* (15 *East*, 224.) That case definitively settles the question, and stops two removes short of allowing interest on monies advanced, and charged in an open account. It is useful as introductory matter to the history of American decisions ; and I am content to submit this case entirely on these. Has any American case gone the length contended for here ? *Lessee of Dilworth* v. *Sinderling* (1 *Bin*. 494) goes the farthest ; and even that case is distinguishable in several particulars. Lord *Ellenborough* speaks for himself in *Calton* v. *Bragg*, to which I refer, in reply to the attack which has been made upon him ; but I agree that our Courts have departed from his rules. This Court did so in *Liotard* v. *Graves*, which is principally relied upon against us. I will merely add, in relation to this case, that it was not one of a running cash

account. Unless the gentleman finds a case of this kind, he does not reach the present. That was placed on the ordinary ground of money received on one side only ; not as here, a long history of payment and reimbursement. *Pease* v. *Barber* (3 *Caines' Rep.* 66) was referred to in order to shew that the rule in *Liotard* v. *Graves* was not intended to be universal, but may be qualified by circumstances. This doctrine, there advanced by *Kent,* J. is pronounced by the gentleman mere legal quackery ; but the same has been often affirmed before, in relation to this subject, by the most distinguished jurists. It will be seen by the American state papers (1 *vol.* 198, 199, 250, *Boston ed. A. D.* 1792) that Mr. *Hammond,* the British minister, complained to the general government, that interest was not allowed by our courts on claims of the British merchants for debts contracted before the revolutionary war ; although, in the spirit of the treaty and usage between the two countries, it should be allowed, after a year from the time of the contract. Mr. *Jefferson,* then Secretary of State, replied in these words : " Even in *England,* the allowance of interest is not given by *express law,* but rests in the *discretion of Judges and Jurors* as arbiters of damages. Sometimes the Judge has enlarged the interest to 20 *per cent. per annum.* (1 *Ch. Rep.* 57.) In other cases he fixes it habitually one *per cent.* lower than the legal rate, (2 *Atk.* 343 ;) and in a multitude of cases he refuses it altogether. As for instance, no interest is allowed, 1. On arrears of rents, profits or annuities, (1 *Ch. Rep.* 184 ; 2 *P. W.* 163 ; *Cas. Temp. Talb.* 2 ;) 2. For maintainance, (*Vin. Abr. Interest,* (C. 10 ;) 3. For monies advanced by executors, (2 *Eq. Abr.* 531, 15 ;) 4. For goods sold and delivered, (3 *Wils.* 206 ;) 5. On book debts, open accounts or simple contracts, (3 *Ch. Rep.* 64 ; *Freem. Ch. Rep.* 133 ; *Dougl.* 376 ;) 6. For money lent without a note, (2 *Str.* 910 ;) 7. On inland bills of exchange, if no protest is taken, (2 *Str.* 910 ;) 8. On a bond after 20 years, (2 *Vern.* 458,) or after a tender ; 9. On a decree in certain cases, (*Freem. Ch. Rep.* 181 ;) 10. On judgments in certain cases, as battery and slander, (*Freem. Ch. Rep.* 37 ;) 11. On any decrees or judgments in certain Courts, as the exchequer chamber,

(*Dougl.* 753;) 12. On costs, (2 *Eq. Abr.* 530, 7.) And we may add, once for all, that there is no instrument or title to debt so formal or sacred, as to give a right to interest on it under all possible circumstances. The words of Ld. *Mansfield,* (*Dougl.* 753,) where he says, 'that the question was, what was to be the rule of assessing the *damage,* and that, in this case, the interest ought to be the *measure of the damage,* the action being for a debt, but in a case of another sort the rule might be different;' his words (*Dougl.* 376,) ' That interest might be payable in cases of delay, if a jury, *in their discretion,* shall think fit to allow it;' and the doctrine in *Giles* v. *Hart,* (2 *Salk.* 622,) that damages, or interest, are but an accessary to the debt, which may be barred by circumstances, which do not touch the debt itself, suffice to prove that interest is not a part of the debt; neither comprehended in the thing nor in the term ; that words which pass the debt do not give interest necessarily ; that the interest *depends altogether on the discretion of the Judges and Jurors,* who will govern themselves by all existing circumstances ; will take the legal interest for the measure of their damages, or more, or less, as they think right ; will give it from the date of the contract or a year after, or deny it altogether, according as the fault or the sufferings of the one or the other party shall dictate."

One distinction taken on the other side, between the ground of allowing interest on money and goods, is, that the former is the circulating medium of the country, and produces a profit, whereas the contrary is the case with goods. The gentleman takes the precise reverse of the ancient proposition. *Aristotle's* reason for denying interest on money is, that it is barren and unproductive, and, therefore, interest should be denied. (Vid. *Ord. on Usury,* 3.) I admit the opposite ground is entitled to about the same weight.

The reason why books of account are not evidence of money lent or advanced is, that they are more rarely made matter of account in the course of business ; but surely interest cannot follow from the greater or less degree of strictness in relation to the proof. Nor is the gentleman right in supposing, that in all the cases of denying interest on an open

account, it was for goods sold—not for money. The case of *Campbell* v. *Mesier*, (6 *John. Ch. Rep.* 21) was of money advanced, but interest was denied till demand. *Porter* v. *Bussey*, (1 *Mass. Rep.* 438) *Storer* v. *Storer*, (9 *id.* 37) *Winthrop* v. *Carleton*, (12 *id.* 4) and *Wyman* v. *Hubbard*, (13 *id.* 232) are of the same character. So of *Thompson* v. *Stewart*, (3 *Con. Rep. N. S.* 171.) *Selleck* v. *French*, (1 *id.* 32) amounts to the same thing. *Jacobs* v. *Adams*, (1 *Dall.* 50) and *Williams* v. *Craig*, (*id.* 313) speak the same language. *Moore's Ex'rs.* ads. *Treasurer*, (1 *Nott & M'Cord's Rep.* 214) to the same point. These were all cases of money advanced; and yet interest was denied, either totally, or allowed from a certain time subsequent to the money falling due. *Kanes* v. *Smith*, (12 *John.* 156) was also such a case. Nothing, as supposed, rested upon the agreement of the parties. That provided nothing in relation to interest. The *Kanes* advanced money to buy goods. What else is meant by the term *advances*, as used there? The word itself imports money or its equivalent—not goods. The concern was not so extensive or important as the one involved in the present case; and, though the *Kanes* expected a handsome profit, they were not allowed even interest. In truth, that case is on all fours with the present one.

I have challenged the production of a single case in which interest was ever allowed on a mutual running cash account; and the gentleman has resorted to *Lessee of Dilworth* v. *Sinderling*, (1 *Bin.* 494) in answer. This is the only case which he produces; and I have admitted that the language and reasoning of the Court is against me. That was ejectment for lands held in trust by the defendant; and the recovery was subject to the payment of his advances as trustee, to be settled by the Court; and the question was, whether he should be allowed interest upon those advances, of which he had kept an account. The Court held that he should; and *Tilghman* C. J. considered this as interfering with the old rule that interest was not allowable on money advanced. Now that question might have been decided, without enquiring whether interest be allowable on an account for money lent or advanced. It was the case of a

charity: the defendant had no expectation of profit. He could not before account to the children, who were infants. In truth, the case depended upon the principle, that a trustee shall neither make gain, nor be accountable for, nor suffer loss in the management of the trust fund. The present is the case of an agent acting under a very liberal compensation. But if *Lessee of Dilworth* v. *Sinderling* be, as supposed, against us, it does not overrule the various cases in this state, *Massachusetts, South Carolina*, &c. which stand directly opposed to it. It is but one decision in a Court in this country against all the other Courts; and Chief Justice *Tilghman* himself, afterwards, in *Brown* v. *Campbell* (1 *Serg. & Rawle's Rep.* 179) laid down the rule with some qualification. This shews that he did not intend, in the previous case of *Lessee of Dilworth* v. *Sinderling*, to advance a general rule; but leave the matter to depend on circumstances.

The rule we contend for may be applied with ease. The term, " open account," has a meaning sufficiently certain, legal and fixed. It is well understood by the law, and the gentleman admits that it is known in the case of goods sold, where interest is denied. It may as easily be known in the case of money advanced; and is recognized in both cases by the Court of Chancery; where you cannot go for an account or *ne exeat*, in certain cases resting properly in assumpsit, unless there be an open running account. The term, therefore, is well understood, and, at any rate, there can be no mistake here. An account of 500 items would, by all the world, be emphatically called an open running one.

Lastly, it is said, that the Court may, nay, will infer an agreement to allow interest, from the circumstances of this case. Perhaps this is the real question in the cause, and it may be necessary to inquire, with a little more particularity, into the state of facts from which Courts will make the inference contended for. What, then, is meant by inferring or implying an intent to pay interest, from the circumstances of the case? 1. If the parties have been previously engaged in the same business, and interest has been charged and paid, without objection, as where accounts have been sta-

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

ted and settled, with annual rests, &c. even in the case of goods sold, &c. 2. If it be proved that the custom of trade, in a particular place, is to allow interest, either generally or after a particular time of credit: 3. Or the custom of a particular trade ; as the American trade with *England* : 4. Or the practice of a particular merchant, as is every day's practice among us. When these usages are shewn, with the fact that the party had, or might have had knowledge of them, the contract is presumed to have been made with reference to such usage, and an agreement is inferred accordingly. Neither of the cases supposed exist here. The parties never dealt before, and this is a special business—not of such a nature that any general usage could exist. However fit it might have been for *Reid* to have exacted interest, in the event of his being in advance, it is a sufficient answer, to say that he did not do it. This omission is itself the strongest of all possible reasons against inferring an agreement. The nature of the transaction was not such as to warrant the inference. Both parties expected that the receipts would cover the expenditures ; otherwise they would not have embarked in the business. If this had not been so, there would have been a special contract with *Reid* to advance. If, then, they did not contemplate *Reid's* advancing, how could they contemplate the payment of interest on advances ? At all events, under this strong expectation, that the receipts would cover the advances, it was proper, as in *Kanes* v. *Smith*, that the defendants should have had notice of the deficiency, before interest began to run. Till this was done, they had every reason to believe that the advances were out of their own funds.

SUTHERLAND, J. It is admitted, that on the 22d of *March*, 1822, when the report of the referees was made, the defendants were justly indebted to the plaintiff in the principal sum of $6882,91 ; and the only error complained of in the report of the referees, is in the interest allowed to the plaintiff. The principle upon which the interest is to be calculated, and the time to which, are the only questions for the determination of the Court.

The question stated.

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

Points settled
by English ca-
ses.

It was justly remarked, at the bar, that there is no subject in the whole range of the English law, on which the authorities are so little in harmony with each other, as on that of interest ; and the American authorities are scarcely less contradictory. It may now, however, be considered as settled, in *England*, that no interest is recoverable upon money lent, money had and received, or paid, laid out, and expended, without an express contract for its payment, or proof that the money has actually been used by the defendant, or of special circumstances, from which an agreement to pay interest may be inferred. Where money is lent upon a *written security*, fixing the day of payment, interest is also recoverable from that day. But where goods are sold upon a credit, no interest is recoverable from the time when the credit expires, without an agreement, either express or implied, to pay it.

English cases
stated and con-
sidered.

In *De Haviland* v. *Bowerbank*, (1 *Campb. Rep.* 50) the question was, whether an agent was responsible for interest upon money had and received, to the use of his principal ; and if liable at all, whether interest should run from the time when the money was received, or from the time when payment was demanded. It was held, by Lord *Ellenborough*, Ch. J. that no interest could be recovered; and he stated the rule to be, that where money of the plaintiff had come to the hands of the defendant, to establish a right to interest upon it, there should either be a specifick agreement to that effect, or something should appear from which a promise to pay interest might be inferred, or proof should be given of the money being used. *De Bernales* v. *Fuller & others*, (2 *Cambp. Rep.* 426) was also a case of money had and received. Interest was refused ; the rule laid down in *De Haviland* v. *Bowerbank* was reiterated, and was also stated to have been confirmed by the Court of King's Bench. In a note to this case, *Gordon & others* v. *Swan & others* is stated, in which the Court of King's Bench determined, that interest is not recoverable in an action for goods sold and delivered, to be paid for *at a certain day*. *Bayley*, J. observed, that the six months credit was for the benefit of the purcha-

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

her, and meant merely that he should not be arrested or sued till the expiration of that time.

In *Calton* v. *Bragg*, (15 *East*, 223) the question was, as to a right to recover interest *upon money lent*. It was argued, that there is a difference between the case of *money had and received* and money *actually lent ;* but the distinction was repelled by the Court ; and, after a consideration of all the authorities, the rule, as laid down by Lord *Ellenborough*, in the cases already cited, was fully sanctioned and established. (*Walker* v. *Constable*, 1 *B. & P.* 306. *Tappenden* v. *Randall*, 2 *id.* 472, *S. P.*) His Lordship has been uniform and consistent in the application of this rule ; for in *Kingston* v. *M'Intosh*, (1 *Campb. Rep.* 518) he refused interest upon the sum insured in an action upon the policy ; in *Atkinson* v. *Lord Braybrooke*, (4 *id.* 380) he decided, that no interest was recoverable in an action upon a foreign judgment ; and in *Crockford* v. *Winter*, (1 *id.* 129) he refused interest in an action for money had and received, although the money had been obtained *by fraud.*

Before the time of Lord *Ellenborough*, it had been held, in the case of *Blaney* v. *Hendrick*, (3 *Wils. Rep.* 205 ; 2 *Bl. Rep.* 761, *S. C.*) that interest was recoverable upon an account stated, and upon money lent; (*Robinson* v. *Bland*, (*Bull. N. P.* 274-5, *S. P.*) and in *Trelawney* v. *Thomas*, (1 *H. Bl.* 305) that it was also recoverable upon *money laid out for the use of another, and for money lent, and that the two cases stood upon the same ground of reason, justice and equity ;* and in *Mountford* v. *Willes*, (2 *B. & P.* 337) interest was allowed in an action for goods sold, from the expiration of the credit given.

Numerous as have been the cases in *England*, in which this question has been raised and discussed, very little has been said by any of the Judges as to the reason or principle upon which the allowance or refusal of interest depends. Lord *Ellenborough*, and the other Judges who have gone with him upon the subject, seem to consider interest as a demand altogether distinct from, and independent of the original debt ; and not as growing out of, or necessarily connected

Little said in English cases as to principle upon which interest is allowable.

Considered a demand distinct from the principal.

with it.(a) They have, therefore, held that, like every other original demand, it must rest either upon an express or implied promise ; and that such promise can never be implied from the circumstances under which the original indebtedness accrued. Thus, *Grose*, J. in *Calton* v. *Bragg*, (15 *East*, 223) says, "It is the lender's own fault, if *he do not contract* for interest when he advances his money. Why should interest be paid at all, without *a contract* for it ? If there be no proof of *a contract*, it might be given against the intention of the parties at the time of the loan. If they did not *then contract* for interest, it shews that they did not mean to receive it." In *Crockford* v. *Winter*, (1 *Campb. Rep.* 149) therefore, the Court held, as they were bound in consistency to do, that although the money had been obtained by *fraud*, no interest could be recovered for it ; because interest is not given by way of *damages*, but on the ground of *contract only*.

Why a promise to pay interest should be implied, from a *written instrument to pay* money by a day certain, and not from a parol promise, as was held by Lord *Ellenbrough*, in *Gordon* v. *Swann*, I must confess I cannot understand. The nature of the undertaking is not altered by its being reduced to writing. A parol promise to repay a sum of money borrowed, by a given day, is as obligatory, between the original parties, as though it had been put into the form of a promissory note; and I can perceive no reason why the breach of the one should not be followed by the same legal consequences as the breach of the other.

Strictness of
English cases
not adopted in
this country.
Cases deci-
ded in New-
York.
The strictness of the English Courts, upon this subject, has never been adopted by this Court, or, I may say, generally, by the Courts of this country. Thus, in *Pease* v. *Barber*, (3 *Caines' Rep.* 266) it was held, that interest may be recovered under a count for money had and received, against the express decision of the English C. B. in *Walker* v. *Constable*, (1 *B. & P.* 307) and *Tappenden* v. *Randall*, (2 *id.* 472.) The Supreme Court there say, "*The action for mo-*

---

(a) The same view is taken of this subject, in Mr. *Jefferson's* letter, cited by *Butler*, arg. in reply, *supra*.

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

*ney had and received, is an equitable action, and the party must shew that he has equity and conscience on his side. The rule, in Equity, is, to allow interest, in many cases, for money had and received.*

In *Liotard* v. *Graves*, (3 *Caines' Rep.* 234) it was held, by all the Judges, that interest is recoverable upon money paid or advanced, from the date of its advancement; but that, upon an account for goods sold, no interest is recoverable, unless there be evidence of an agreement to pay it, until a liquidation of the account takes place. *Newell* v. *Griswold*, (6 *John. Rep.* 45) also decides the latter point.

In *Beals* v. *Guernsey*, (8 *John. Rep.* 446) which was an action of trespass against a Sheriff, for illegally taking the plaintiff's personal property, interest was allowed, *by way of damages.* The Court say, "The plaintiff ought not to be deprived of his property, for years, without compensation for the loss of the use of it; and the jury had a discretion to allow interest in this case, as damages. It has been allowed in actions of *trover*, and the same rule applies in trespass, when brought for the recovery of property."

In *The People* v. *Gasherie*, (9 *John. Rep.* 71) interest was allowed on money which had been collected and applied, by the testator of the defendant, to his own use, from the time when it ought to have been paid over. The Court advert to the (then) late English decisions, in which interest had been refused on liquidated sums, and on money obtained by fraud, and express their dissatisfaction with them. They say, " *If the defendant retains, and converts to his own use, the plaintiff's money, he ought to pay interest.* It is allowable in actions for money had and received. In *trover*, for a specifick chattel, the jury may, and, in many cases, ought to allow interest for the detention, by way of damages."

The case of *Kanes* v. *Smith*, (12 *John.* 156) falls within the principle of unliquidated accounts for goods, &c. The advances made by the plaintiffs were not in money, but in *cargoes;* that is, in merchandize. The defendant furnished a cargo of wine, which the plaintiff's ship took to the *East Indies*, under a special agreement as to the mann erin which the proceeds should be disposed of. One part of the agree-

ment was, that the plaintiffs should be reimbursed out of the net proceeds of the wines, for their *advances ;* and for the surplus of such proceeds, to furnish cargoes to the defendants, or bills on *London, allowing interest from the time of the sale in India on the overplus ;* and should the wines not net sufficient to pay the advances, *the defendants were to make up. the deficiency.* Here, then, was a special agreement, on the part of the plaintiffs, *to pay interest on the overplus,* if the wines should produce more than their advances : but if they should produce less, the defendants were to make up *the deficiency.* Nothing was said about interest, from which the inference is very strong, that it was the understanding of the parties that they were not to pay interest. It was, therefore, properly disallowed to the plaintiffs, either upon the ground that it was an unliquidated account, in relation to goods, wares and merchandizes, or upon the ground of the special agreement.

The same general principles have been established in *Massachusetts* and *Pennsylvania.* (*Fowler* v. *Shearer,* 7 *Mass. Rep.* 24. *Wood* v. *Robins,* 11 *Mass. Rep.* 504. *Weeks* v. *Hasty,* 13 *Mass. Rep.* 218.) These were actions for money paid, and money had and received, and interest was recovered from the time the money was paid or received.

So in *Rapelie* v. *Emory,* (1 *Dall. Rep.* 349) interest was allowed on money had and received. It was put upon the same ground as money lent, and held to be clearly distinguishable from the case of goods sold and delivered, where no money passes between the parties. In *Commonwealth* v. *Crevor,* (3 *Binn. Rep.* 123) *Tilghman,* Ch. J. says, it is considered as settled, that interest shall be recovered against a man who has received the money of another, and holds it against his consent. *The Lessee of Dilworth* v. *Sinderling,* (1 *Bin. Rep.* 488) is very analagous, so far as the question of interest was concerned, to the one now under consideration. There a trustee was allowed interest upon advances made by him for the use of the *cestuy que trust.* Those advances were part of a general unsettled account with the trust estate, composed of charges for expenses and advances in erecting buildings, &c. on the one side, and of credits for

rent received on the other. The account was of thirty years standing; and the principal advances on which interest was allowed, were made eighteen years before the trial. The *cestuis que trust* were not consulted upon the propriety of making the advances; nor was any account ever rendered by the trustee. It was admitted, that the advances made were judicious and proper; and that the trustee had discharged his trust with fidelity. *Tilghman*, Ch. J. in delivering the opinion of the Court, says, " It seems to have been formerly held, that interest was not allowable on an account for money lent and advanced. That opinion gradually declined, upon more mature reflection, and it may now be affirmed to be the settled law, that interest is recoverable for money lent and advanced. Is there any thing peculiar in this case, to distinguish it from the general rule? If the trustee had borrowed money, he must have paid interest, which would have fallen on the trust estate. Now where is the difference to the *cestuy que trust*, whether interest is paid to the trustee or to a stranger? There is no just cause of complaint, because the jury have allowed interest."

These cases appear to me to put the claim of interest upon its true principle. They consider it as a necessary incident to the principal debt; and imply a promise to pay it from the day the *debt* becomes due, if it is not paid. This promise is supported by the universal obligation which rests upon every man to render a just equivalent for the use or detention of that which does not belong to him. The value of money is the legal rate of interest. That, then, shall be paid.

*American cases cited consider interest an incident to the principal debt.*

In actions sounding in *tort*, where no contract can be supposed to exist, the same rule of compensation may be adopted for the improper detention of specific articles of personal property; but it shall be given by way of damages, and not as interest.

*Interest allowed in actions sounding in tort.*

No interest shall be allowed upon an unliquidated account for goods, wares, and merchandize, without an agreement to allow it either express or implied; because the *balance* of the account, only, constitutes the debt, and, until that is ascertained, there is, strictly speaking, no debt due. This appears from the manner in which an account may be proved.

*Interest not allowed on unliquidated account; and why.*

It is not necessary to shew the delivery of each article ; but proof that some were delivered ; and that the plaintiff keeps honest and fair books of account, &c. is evidence of the delivery of all the articles charged in the book. Thus, the whole account is considered as one transaction. But an unliquidated account for money paid, laid out and expended, stands upon a different footing. Each advance of money is a loan, distinct and independent of any other advance. It is not, strictly speaking, matter of account. Each charge must be specifically proved. The proof of several advances, together with the keeping of correct books of account, would not be evidence of the other advances charged in the same account. Each sum paid, or laid out, must therefore be considered a debt, due from the time it is advanced, and, of course, carrying interest, unless there be some agreement to the contrary.

The reason sometimes given, why an unliquidated account should not carry interest, viz. " that the defendant does not know how much he has to pay," can not be the true one. It would be a sufficient answer to it, to say that he can always ascertain the balance by application to the plaintiff. But again, an agreement, either express or implied, to pay interest on the different items of an account, either from the day of their delivery, or after a given credit, will be effectual. But, notwithstanding such agreement, the defendant is as ignorant of the balance of the account, as though it had not been made. If such ignorance, therefore, was the ground for refusing interest, it would not and ought not to be allowed, notwithstanding the agreement. But such agreement breaks up and destroys the individuality of the account, and renders each item a distinct independent debt, due at the time agreed upon, and, of course, carrying interest from that time.

But whether this reasoning be sound or not, is of very little importance. For I conceive the principle which it is intended to illustrate to be fully established in the cases of *Liotard* v. *Graves, and of the Lessees of Dilworth* v. *Sinderling & Lewis,* already cited, viz. that an unliquidated account for money paid, or lent, does carry interest. When-

*It is settled in this state that interest is allowable on an open mutual cash account.*

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

Principles applied to present case.

ever it is said, therefore, that no interest is recoverable upon an unliquidated account, an account other than for money lent, or advanced, or had and received, must be understood.

To apply these principles to the case before us. In *May*, 1813, *Reid* entered upon the duties of active agent for the defendants. The case states, "that, at that time, the stock, materials and funds of the defendants were insufficient *to keep the factory in operation ; and large advances were required for that purpose.* No express authority or direction was given to *Reid* to make the advances ; but if they were necessary to keep the factory in operation, and no provision was made by the company for them, an authority to the agent to procure them was necessarily implied. It must be understood that the defendants were well informed of the state of their affairs when *Reid* entered upon the agency. Knowing, then, that advances were necessary to keep the works in operation, and it being the business and duty of the agent to keep them in operation, the fact of his appointment as agent, under such circumstances, implied an authority to make advances, or borrow money for the purpose. His skill and fidelity in the management of the concerns of the company have not been called in question. It is not pretended that the advances exceeded the exigencies of the concern, or that they have not been proved and established with the most scrupulous exactness.

The case states that the debtor side of the plaintiff's account consisted of more than five hundred charges, for distinct advances, each of which was clearly proved. The particular purposes to which the money thus advanced was applied is not stated in the case. That they were such as came within the scope of the authority of a general agent, there can be no doubt, or the plaintiff's demand would have been resisted on that ground. But the only ground of complaint is, that the intestate did not render his account ; and apprise the defendants that it was a losing concern. No reluctance was ever manifested by him to account. His account was never asked for until 1819, when he stated to some of the directors that the company were in his debt;

but no formal demand of his account was then made. He appears to have exerted himself faithfully and successfully in collecting the funds of the company, and applying them to the discharge of their debt ; and there is nothing in the case from which the slightest impression can be derived that the company could or would have made other or more advantageous arrangements, if they had been fully apprised of the state of the account. All the directors, and most of the stockholders of the company, resided in the same city with the plaintiff, where the business was conducted ; and it is hardly to be supposed that they were not individually informed of the true state of their affairs, although no formal report was ever made to a board of directors. It appears to me, therefore, that upon every principle of justice and equity, Reid's representatives are entitled to interest upon the moneys advanced by him for the use of the company, at least until 1819, when some of the individual directors asked him for his account.

*Interest should be allowed till 1819.*

I think he is not entitled to interest upon his compensation as agent. No agreement was ever made as to the amount which he was to receive. His predecessor, it is true, had received $1250 ; but the company were not concluded by that circumstance from lessening the compensation to him, if, either from the diminished duties of the station, or the state of their funds, they thought it expedient. There was nothing by which either party was concluded as to the amount of compensation. It could be recovered only upon a *quantum meruit ;* and must be considered as an uncertain and unliquidated demand ; and, therefore, cannot carry interest until demand made. (*Trelawny* v. *Thomas,* 1 *H. Bl.* 305, *per Gould, J.*) With these modifications, I am of opinion that the report of the referees should be confirmed.

*But not on salary.*

SAVAGE, Ch. J. The questions for the decision of the Court are, whether the plaintiff is entitled to interest on any part of her demand ; and if any, on what part, and for what time.

*The questions.*

To decide these questions correctly, it seems to me important to understand what was the agreement between the

*Case stated.*

parties ; and if nothing was expressed as to the mode of carrying on the business, what they must have understood to be the contract between them in this respect.  *Reid* was a stockholder from the organization of the company.  He knew, and so did the defendants, how the business had been carried on.   Whether it had been profitable while *Kane* was agent, does not appear ; nor whether he made the necessary advances during that time.   In 1809, five stockholders took a lease of the works for three years.   In *May*, 1812, a partnership was formed between the defendants and *Reid & Alsop*, in which it was stipulated that *Reid & Alsop* should make the necessary advances of money, and receive interest for it.   They did so ; but whether the co-partnership was profitable or otherwise, does not appear, except that, on settlement, a balance was due to the defendants.

It is stated in the case, that when *Reid* was appointed agent in 1813, " the stock, materials and funds of the defendants were insufficient to keep the factory in operation, and large advances were required for that purpose." What, then, was the understanding of the parties as to the manner of carrying on the business ? How were those advances to be made, and by whom? And on what terms ? Without funds the business could not be prosecuted.   Had the defendants intended to furnish the necessary funds themselves, they would have made a further call upon the stockholders. Not having done so, they must have intended that the advances should be procured in some other way ; and, of course, by the agent, as he was the only active person engaged in the business, and had, the preceding year, made the advances in the same business.   It was certainly no part of his duty, as agent, to make advances from his own funds. Suppose it had not been in his power to do this : the defendants did not furnish them ; and suppose that, under these circumstances, he had borrowed the necessary amount : would it be contended that he should pay the interest himself? Why should he do this ? was he to be benefitted by the use of the money ? Or was it the defendants, the principals for whom the agent acted, who were to receive the con-

*It was understood that the agent should advance—*

*not for his own benefit; but for the benefit of his principals ;*

Reid
v.
Rensselaer
Glass Factory.

And was the same to them as if he had borrowed the money for them.

templated profits from the use of the money borrowed? The agent had no farther interest in the profits than as a stockholder. It was the same thing to the defendants, whether they had advanced the funds themselves, or had borrowed them. In the first case, they would have diverted so much money, which was producing them, at least, the interest; in the second, they were taking the interest of their own money to pay the interest of that which was borrowed to carry on the factory: so that whether the agent borrowed the money of others, or advanced his own, was precisely the same thing to the defendants. The interest of the capital employed, is certainly a proper item to charge in ascertaining the profit or loss in the prosecution of any business; and had the business, in this instance, been profitable, I apprehend the objection would not have been thought of. On the other hand, is there any principal of law or justice, which requires an agent to carry on the business of his principal at his own expense?

Whether interest be recoverable on unliquidated account for monies.

It was contended on the argument, that interest is not recoverable on an unliquidated account for monies, unless there be an agreement to pay interest, express or implied, or a fraudulent detention or vexatious delay; and that the case under consideration comes within that principle. A review of some of the cases on this subject may be of use.

English cases.

The oldest case cited is that of *Sweatland* v. *Squire* (2 *Salk.* 623, *A. D.* 1699,) where it was said by *Powell*, J. that interest is recovered by way of damages, when damages are recovered *ratione detentionis debiti;* but not when damages only are recovered; for interest is not recovered *occasione dampnorum.* In the *Attorney General* v. *The Brewer's Company*, (1 *P. Wms.* 376, *A. D.* 1717) the defendants were trustees of a charity; and, by improving the trust estate, had brought the charity in debt. On rendering an account, Ld. *Cowper* refused to allow interest before the confirmation of the master's report; for, until then, it was not a liquidated sum. In *Harris* v. *Benson*, (2 *Str.* 910, *A. D.* 1732) the Chief Justice said interest had never been allowed for money lent, without a note. In *Robinson* v. *Bland*, (2 *Burr.* 1085, *A. D.* 1760) it was decided, that interest was recov-

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

crable on money 'ent, from the time when it was agreed to be paid. In *Borret* v. *Goodere,* (1 *Dick.* 428, *A. D.* 1769) Lord *Camden* said there is no instance whe e interest is given on an open mutual account, without some particular circumstances. That was a case of cash advances, as appears from a full report of it in 6 *Br. P. C.* 364. *Blaney* v. *Hendricks,* (2 *Bl. Rep.* 761, *A. D.* 1770) allowed interest on an account stated; and the Judges remarked, that it was properly allowable on money lent. In *Trelawney* v. *Thomas,* (1 *H. Bl.* 304, *A. D.* 1789) *Gould,* J. said interest was recoverable on money lent; and that money laid out for the use of another, and money lent, stood on the same ground in respect to reason, justice and equity, but that no interest should be allowed for work and labour. or goods sold and delivered. Upon the authority of this case, *Livermore,* in his treatise on agency, (*vol.* 2, *p.* 17) lays down the rule, that an agent who has advanced money for his principal, will be entitled to interest from the time of the advance. In *Craven* v. *Tickell,* (1 *Ves. Jun.* 63, *A. D.* 1789) Lord *Thurlow* said, money paid to workmen, who were to have been paid by the defendant, was money advanced for him; and that it was the constant practice at *Guildhall,* either by the contract or in damages, to give interest upon every *debt detained.* In *Walker* v. *Constable,* (1 *B. & P.* 307, *A. D.* 1798) the Court were of opinion that, in an action for money had and received, no interest could be recovered. In *Mountford* v. *Willes,* (2 *B. & P.* 337, *A. D.* 1800) interest was allowed on goods sold, after the term of credit agreed on had expired. In *Tappenden* v. *Randall,* (2 *B. & P.* 471, *A. D.* 1801) the rule, as previously laid down in *Walker* v. *Constable,* was adhered to; and *Moses* v. *M'Farlan,* (2 *Burr.* 1005) was cited, where it is incidentally said, that the plaintiff can recover no more than the money retained by the defendant, against conscience. In *De Haviland* v. *Bowerbank,* (1 *Campb. Rep.* 50, *A. D.* 1807) Lord *Ellenborough* said, where money of the plaintiff had come to the hands of the defendant, interest ought not to be recovered, without an agreement, or something from which an agreement might be inferred, or proof that the money had been used. In *De*

*Bernales* v. *Fuller*, (2 *Cambp. Rep.* 426, *A. D.* 1810) he adhered to the same rule; and the whole Court of K. B. concurred, that the money should not draw interest even after a demand of payment; and afterwards, in *Calton* v. *Bragg*, (15 *East*, 223, *A. D.* 1812) the same Judge said that Ld. *Mansfield* had sat in the K. B. for upwards of 30 years, and Ld. *Kenyon* for more than 13 years; that he had been there above 9 years; and during all that time, no case had occurred where interest had been allowed upon money lent, without an agreement for it, or for the payment of the principal, at a certain time, or under special circumstances, from which a contract might be inferred.

In *Rapelie* v. *Emory*, (1 *Dall. Rep.* 349, *A. D.* 1788) it was ruled, by *Shippen*, President, that when one man has received the money of another, and retains it without his consent, it is to be considered in the same light as money lent, and should carry interest. In *Crawford* v. *Willing*, (4 *Dall. Rep.* 289, *A. D.* 1803) *Smith*, J. said, " Whatever may have been the doctrine in former times, we have traced, with pleasure, the progress of improvement, upon the subject of interest, to the honest and rational rule, that wherever one man retains the money of another, *against his declared will*, the legal compensation for the use of money shall be charged and allowed; and that, in the case of goods sold, interest should be allowed after the time of credit had elapsed, and demand of payment was made. In *Lessee of Dilworth* v. *Sinderling*, (1 *Bin. Rep.* 494, *A. D.* 1808) *Tilghman*, Ch. J. declared the law to be settled, that interest is recoverable on an account for money lent and advanced; and it was allowed to a trustee, upon advances laid out in improvements upon the trust estate, it appearing that the improvements were necessary and proper. In *The Commonwealth* v. *Crevor*, (3 *Bin. Rep.* 123, *A. D.* 1810) he says, it is settled, that interest shall be recovered against a man who receives the money of another, and *holds it against his consent*. In *Brown* v. *Campbell*, (1 *Serg. & Rawle's Rep.* 179, *A. D.* 1814) he again says, the rule is, to allow interest where the defendant has *retained the money* of the plaintiff unlawfully, and *against his consent*: that, until the defendant was informed that the plaintiff's money was applied to his

use, he was in no default, and, therefore, ought not to pay interest ; but, being informed, he became a wrong doer in withholding payment, and, therefore, should pay interest.

In *Wood* v. *Robbins*, (11 *Mass. Rep.* 504, *A. D.* 1814) the defendant had fraudulently obtained possession of the plaintiff's money ; and *Putnam*, J. after reviewing most of the authorities, says, there may be cases where interest should not be allowed, as where the defendant was a mere stockholder, ready to pay the money to the party entitled ; but when the defendant has frauduletly obtained the money, or wrongfully detained it, he must be charged with interest. In *Winthrop* v. *Carleton*, (12 *Mass. Rep.* 4, *A. D.* 1815) the plaintiff, as consignee, made necessary advances, and recovered interest on them *after suit brought.*

In *Connecticut*, as appears by *Selleck* v. *French*, (1 *Con. Rep. N. S.* 32, 35, *per Swift*, J. *A. D.* 1814) interest is allowed on the ground of a contract expressed or implied, or as damages for the breach of a contract, or the violation of some duty : *e. g.* 1. Upon an express contract : 2. Upon an implied contract, arising from usage of trade, or former dealings between the parties : 3. Upon a written contract to pay at a day certain, as on bills and notes, and on a policy after the money becomes due : 4. For goods sold, after the time of credit has expired : 5. For money received to the use of another, and *retained contrary to duty :* 6. For money obtained fraudulently, if the tort is waived, and assumpsit brought : 7. On a liquidated account : 8. On book account for services performed or articles sold, when, from the nature of the transaction, it appears not to be the intention of the parties that the services or articles were to rest on the footing of a mutual account on book : 9. But where there are mutual accounts, founded on mutual dealings, unless there be some promise or usage to pay interest, it will not be allowed. In such cases, no time of payment is stipulated ; each party is making payment ; the balance is constantly changing ; and the presumption is, that no interest is to be charged. In the case then before the Court, interest was allowed ; there were no mutual dealings ; the advances were all on the part of the plaintiff ; there was no liquidated account, nor promise, nor usage ; but the debt was

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

*Massachusetts.*

*Connecticut.*

ALBANY,
October, 1824.

Reid
v.
Rensselaer
Glass Factory.

United States.

New-York.

due, and payment unreasonably delayed. The particular circumstances of the case are not stated. (See, also, *Thompson* v. *Stewart*, 3 Con. Rep. *N. S.* 171, 185, *A. D.* 1819.)

In *Gammell* v. *Skinner*, (2 Gall. Rep. 45, *A. D.* 1814) interest was denied on seaman's wages, until after demand made; and where there had been no actual demand, it was held to run from the commencement of the suit.

In this state there have been several decisions on the subject of interest, which apply to most of the questions under consideration. *Liotard* v. *Graves*, (3 Caines' Rep. 226, *A. D.* 1805) is a leading case. There, an account current had been rendered in 1797, containing a charge of interest, which was not objected to in the succeeding correspondence between the parties. *Spencer*, J. says, that for goods sold and delivered, unless there be evidence of an agreement to pay interest, none is recoverable until liquidation; that an account transmitted to a debtor, and acquiesced in, becomes liquidated, and interest is allowable; that on money advanced interest is legally demandable; and so by the usage of a particular trade. *Thompson*, J. said the plaintiffs had a right to charge interest on the money advanced; that the account could not be considered settled, and on that ground carrying interest; that it was merely an account current between the parties; and, unless some usage or practice was shewn, to warrant the allowance, he should think interest ought not to be calculated, except on the money advanced. *Livingston*, J. said, " If there be no special agreement between the parties, or usage of trade to the contrary, it ought to be allowed on all moneys advanced from their respective payments. One account is rendered as early as 1797, in which interest is calculated, and yet no objection is made to it in the succeeding correspondence, from which I conclude such charge consisted with the understanding of the parties." *Kent*, Ch. J. said, "the account exhibited is not an account liquidated, but a naked account current; and interest is allowable only on such *items* in it as are for moneys advanced, except the usage of trade has provided some particular rules on the subject." At the next term, the case of *Pease* v. *Barber*, (3 Caines' Rep. 266, *A. D.*

1805) was decided. It did not state any facts, but the question was submitted, whether interest could, in any case, be recovered under a count for money had and received. *Kent*, C. J. delivered the opinion of the Court, that interest may be recovered in such an action. He says, there may be cases in which the defendant ought to refund the principal merely ; and there may be other cases in which he ought, *ex equo et bono*, to refund the principal with interest. Each case will depend upon the justice and equity arising out of its peculiar circumstances, to be disclosed at the trial. In an anonymous case, (1 *John. Rep.* 315, *A. D.* 1806,) the Court said the general rule is, that interest is not to be recovered on unliquidated damages, or for an uncertain demand. The question arose in an action upon a policy of insurance, and they said it was a case for the discretion of a jury. *Newell* v. *Griswold*, (6 *John. Rep.* 45, *A. D.* 1810) was assumpsit for goods sold ; and there were mutual accounts ; but no account stated, or balance struck. The Court said, "there is nothing in the course of dealing between the parties from which an intent or agreement to allow interest can be inferred. It is, therefore, not a case of interest." In *Holliday* v. *Marshall*, (7 *John. Rep.* 213, *A. D.* 1810) the plaintiff had procured an appraisement of certain buildings under a covenant in a lease, of which the defendant had notice. The plaintiff claimed interest on the appraisement ; but the Court said it was not conclusive ; that the value of the buildings was open for inquiry at the trial ; and the damages were, therefore, unliquidated ; and no interest was recoverable. In *The People* v. *Gasherie*, (9 *John. Rep.* 71, *A. D.* 1812) a recovery was had for money retained by a loan officer, with interest from the time when he ought to have paid it into the treasury. The Court said, " It is just and reasonable, in itself, that the defendant, who retains and converts the money of another to his own use, should pay interest for that use." And they declared *Crockford* v. *Winter*, (1 *Campb. Rep.* 128,) and *De Bernales* v. *Fuller*, (2 *Campb. Rep.* 426) not to be law here. In *Kanes* v. *Smith*, (12 *John. Rep* 156, *A. D.* 1815) the plaintiffs, at *New-York*, sent to the defendants at *Madeira*, pursuant to an agreement, cer-

tain vessels, which were to be employed in carrying wines to the *East Indies.* The plaintiffs were to advance ⅔ of the invoice price of the wines, to be reimbursed out of their net proceeds; and should these be insufficient to pay the advances, then the defendants were to make up the deficiency. The wines, contrary to the expectation of the parties, did not prove sufficient to re-imburse the plaintiffs for their advances; and on the question whether the interest should be allowed upon these, the Court said the plaintiffs were not entitled to interest, *till the deficiency was ascertained and notified to the defendants;* that the wines went in the plaintiffs' vessel; that they alone could ascertain the proceeds, and furnish the accounts of sales to show the balance; *that the defendants were not in default, till the balance was ascertained and notified to them.* Thomas v. Weed, (14 *John. Rep.* 255, *A. D.* 1817) was an action of debt upon the statute, against a constable, for not returning an execution. The Court recognize the law that interest is recoverable for money received by the defendant for the plaintiff, or lost by negligence; but the form of the action precluded its allowance in that case. In *Walden* v. *Sherburne,* (15 *John. Rep.* 424, *A. D.* 1818,) *Spencer,* J. says, " We have uniformly decided, that after an account has been liquidated, it carries interest; and that an account is to be considered liquidated after it is rendered, if objections are not made to it."

In *Campbell* v. *Mesier,* (6 *John. Ch. Rep.* 24, *A. D.* 1822) Chancellor *Kent* says, " it is the settled rule in the law of this state, that money received or advanced for the use of another carries interest *after a default in payment;* and it is a very resonable and just rule."

From an examination of these cases, it seems that interest is allowed, 1. Upon a special agreement: 2. Upon an implied promise to pay it; and this may arise from usage between the parties, or usage of a particular trade: 3. Where money is withheld against the will of the owner: 4. By way of punishment for any illegal conversion or use of another's property: 5. Upon advances of cash, on the authority of *Liotard* v. *Graves.*

Among all the cases examined, however, I do not find any one precisely parallel to the present. Here, both parties were upon the spot, when the business was transacted. The agent acted almost constantly under the eye of his principals. The reason why the Court would not give interest in *Kanes* v. *Smith*, (12 *John. Rep.* 156.) till rendering the account, was, that the plaintiffs alone knew the fact that the proceeds of the wine did not re-imburse the advances. In this case, it may be said, that *Reid* alone knew he had not been re-imbursed for his advances by the proceeds of the glass. He alone kept the books; but, it is equally certain, that the defendants knew of his advances ; and they might have known the state of the accounts, by inspecting the books. They often held their meetings at *Reid's* store, where the books were undoubtedly kept.

But was it not his duty, as agent, to have rendered accounts regularly to his principals ; and to have kept them advised of the true state of their affairs ? There certainly appears to have been a culpable negligence on both sides. The defendants do not seem to have appointed any committee, to examine *Reid's* accounts, as they did *Kane's*, when he was their agent.

The defendants, having agreed to pay interest upon the advances made by *Reid & Alsop*, admitted, in that instance, at least, the propriety of such a charge against them. And, on the whole, I am of opinion, that from the manner in which the business had been done, the year next previous to the appointment of *Reid* as agent ; from this being done, with a full knowledge on both sides that large advances were necessary ; if the defendants did not mean to pay interest, they ought so to have informed *Reid*, in order that he might not be using a large capital in their service when it was to be totally unproductive to him. Although *Reid* had the means of ascertaining the true state of the accounts, yet he had not the sole means. The defendants were equally able to determine by an inspection of the books whether he had been re-imbursed for his advances. The case does not inform us that any intimation was given by

Reid
v.
Rensselaer
Glass Factory.

*Reid*, of a balance due to him, till the 1st of *January*, 1819, though the factory was burnt on the 3d of *May*, 1815. Nor does it appear, that before the 1st of *January*, 1819, any step whatever was taken by the defendants to ascertain their standing with *Reid*. After that time, *Reid* alone was in fault, as he neglected to furnish an account, and none was rendered till after his death. I think, therefore, that interest is properly chargeable on the monies advanced from the time of such advances respectively to the time when there was an attempt by the defendants to liquidate and settle the account.

Interest should be allowed till 1st January, 1819, on advances;

But not on the salary.

As to the compensation for *Reid's* services, no sum was ever agreed upon between the parties; and his claim for these was never liquidated till it was done by the referees. Interest ought not, therefore, to be allowed on his salary.

WOODWORTH J. being a stockholder in the company, gave no opinion.

Rule.

RULE : That the report of the referees, made in this cause, he set aside, so far as it allows interest to the plaintiff, after the 2d day of *January*, 1819 ; and on the charges for the salary due the intestate ; and that, in pursuance of the stipulation of the parties, the cause be again referred to the referees appointed therein ; and that they calculate, and report the amount due to the plaintiff for interest up to the 2d day of *January* 1819 ; and in addition to the sum reported to be due to her ; and that the calculation be made by allowing interest on the receipts and advances of cash, from the time of make, or receiving the same, to the said 2d day of *January* ; and that neither party be allowed, as against the other, costs of the motion to set aside the report.

ALBANY,
October, 1824.

General Rule.

GENERAL RULE.

In Supreme Court, *October* term,
*November* 13, 1824.

ORDERED, That when a bill of exceptions is taken at the Circuit, the party obtaining a verdict may notice the bill of exceptions for argument as frivolous, and the same shall have a preference, as in case of a frivolous demurrer, unless the party taking such exception shall, within four days after the trial, or before the same is noticed for argument, obtain, and serve on the opposite party, a certificate of the Circuit Judge, that there is probable cause to stay the proceedings, until the cause is reached in its regular order on the calendar.